IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARIA DE LA LUZ RAMIREZ, § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:13-CV-3846-N-BK |
| § | |
| CAROLYN COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Judge's order of referral, the undersigned now considers the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 10, be **GRANTED**, *Defendant's Motion for Summary Judgment*, Doc. 12, be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED**.

### I. BACKGROUND[1]

#### A. Procedural History

Plaintiff seeks judicial review of a final decision by Defendant denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). In May 2011, Plaintiff filed for DIB, claiming that she became disabled on June 1, 2009. Doc. 8-6 at 10–11. Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 8-3 at 8–10, 20–22; Doc. 8-5 at 6–9, 11–13.

#### B. Factual Background

At the time of her alleged onset of disability, Plaintiff was 59 years old. Doc. 8-6 at 10.

---

[1] The following background comes from the transcript of the administrative proceedings, Docs. 8-1 through 8-9.

1

She has a GED and was previously employed as an accounting and payroll clerk. Doc. 8-3 at 40.

### 1. Treatment with Dr. Don Cheatum

Dr. Don Cheatum periodically treated Plaintiff since 1984. Doc. 8-8 at 50. In April 2009, Plaintiff sought treatment for seropositive rheumatoid arthritis, mild systemic lupus erythematosus ("SLE") overlap, and Sjögren's syndrome.[2] Doc. 8-8 at 50. On that and numerous occasions between July 2009 through February 2013, Plaintiff saw Dr. Cheatum again, complaining of mild fatigue and minimal morning stiffness, Doc. 8-8 at 29, 32, 34, 36, 39, 41, 42, 45, 47, 70, 125, 146; Doc. 8-9 at 26, 29, sometimes describing a flare-up of pain, Doc. 8-8 at 32, 34, 36, 37, 41, 42, 47, 49; Doc. 8-9 at 26, 29. On examination, Dr. Cheatum often found that she had good range of motion in her joints with no active synovitis or deep vein thrombosis ("DVT"). Doc. 8-8 at 26, 32, 34, 36, 39, 41, 42, 44-45, 47, 49, 51, 70, 124, 146; Doc. 8-9 at 26, 29. On several occasions, he noted that she was "doing well" or "doing very well." Doc. 8-8 at 29, 33, 44, 46–47. However, Dr. Cheatum did find multiple instances of tenderness and mild swelling — sometimes with good range of motion, other times with mild restriction in range of motion, and most times in a different area than the previous exam. Doc. 8-8 at 29, 32, 34, 36, 37, 39, 41–42, 45, 47, 49, 51, 70, 124–25, 146; Doc. 8-9 at 26, 29. At Plaintiff's request, Dr. Cheatum sometimes treated Plaintiff with Kenalog and Lidocaine injections at tender areas. Doc. 8-8 at 32, 37, 40, 42, 47, 49, 51, 71. Dr. Cheatum administered no injections after August 2011. Doc. 8-8 at 70, 124–25, 146; Doc. 8-9 at 26, 29.

In June 2011, Dr. Cheatum completed a Rheumatoid Arthritis Impairment Questionnaire, in which he noted Plaintiff's pain in her neck, upper and lower back, left shoulder, knees, and

---

[2] A disease marked by a combination of keratoconjunctivitis (resulting in dry eyes), xerostomia (dry mouth), and chronic arthritis. 3 AUSMAN & SNYDER'S MEDICAL LIBRARY § 4:84.

right hand and wrist. Doc. 8-8 at 54–55. Dr. Cheatum listed among Plaintiff's positive clinical findings: abnormal gait; abnormal posture; reduced range of motion in her left shoulder, hands, wrists, and right knee; reduced grip strength in her left hand; reflex changes in her feet; tenderness in her upper and lower back, hands, wrists, knees, and left shoulder; swelling in her right knee, feet, and ankles; joint warmth in her hands, knees, and left shoulder; joint instability in her knees and left shoulder; muscle spasms in her upper back, lower back, and neck; muscle weakness in her feet, right knee, and shoulders; and trigger points in her right shoulder, neck, upper and lower back, and left knee. Doc. 8-8 at 55. Dr. Cheatum opined that Plaintiff's pain was severe, chronic, and constant, and most frequently occurred in her right knee and left shoulder. Doc. 8-8 at 56. He rated the severity of Plaintiff's pain at 9 on a 10-point scale. Doc. 8-8 at 57. On this basis, Dr. Cheatum concluded that Plaintiff could sit and stand/walk for only 15 minutes at a time during an eight-hour work day (moving around every 15 minutes and staying up for 15 minutes before sitting again), and that she could not sit or stand/walk continuously in a work setting. Doc. 8-8 at 57. He further remarked that Plaintiff could occasionally lift only five pounds and that Plaintiff's experience of pain would constantly interfere with her attention and concentration. Doc. 8-8 at 58. Dr. Cheatum found that Plaintiff was incapable of even low-work stress because she was "in pain with fatigue," and that she would likely be absent from work more than three times a month as a result. Doc. 8-8 at 58–59. Finally, Dr. Cheatum stated that the earliest date that his description of symptoms and limitations applies is June 30, 2009, the "first date of disability." Doc. 8-8 at 60.

### 2. *Questionnaire of Dr. Alfred Zevallos*

Plaintiff saw Dr. Alfred Zevallos between 2007 and 2012 for hypertension, general care, and migraines. Doc. 8-8 at 19–22, 73–74, 136–39; Doc. 8-9 at 4. In September 2012, Dr.

Zevallos completed a Multiple Impairment Questionnaire in which he stated he saw Plaintiff primarily for hypertension and that her prognosis was fair. Doc. 8-9 at 4. He estimated Plaintiff's level of pain at 6 and level of fatigue at 7 on a 10-point scale. Doc. 8-9 at 5. Like Dr. Cheatum, Dr. Zevallos opined that Plaintiff can only sit and stand/walk for one hour each workday, and must get up and move around every 15 minutes without sitting for an additional 15 minutes. Doc. 8-9 at 5–6. He further remarked that Plaintiff can occasionally lift only 10 pounds or less, and that repetitive reaching and lifting aggravate her arthritis. Doc. 8-9 at 6. Dr. Zevallos concluded Plaintiff was moderately limited in grasping, turning, and twisting objects; using fingers and hands for fine manipulations; and using arms for reaching. Doc. 8-9 at 6–7. He opined that Plaintiff's pain and fatigue frequently interfere with her attention and concentration, Doc. 8-9 at 8, and concluded that Plaintiff was capable of tolerating only low work stress because of her worsening depression. Doc. 8-9 at 8. Dr. Zevallos stated that the earliest date these symptoms and limitations apply was March 2011. Doc. 8-9 at 9.

### 3. *Residual Functional Capacity Assessment of Dr. Kimberly Hewitt*

In July 2011, Dr. Kimberly Hewitt reviewed the medical evidence in the record and completed a Residual Functional Capacity (RFC)[3] Assessment, in which she concluded that Plaintiff had the ability to occasionally lift ten pounds, frequently lift less than ten pounds, sit for about six hours in an eight-hour workday, and stand/walk four hours in an eight-hour workday. Doc. 8-8 at 62. Dr. Hewitt opined that Plaintiff could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but never climb a ladder or rope. Doc. 8-8 at 63. Dr. Hewitt also

---

[3] The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is the most that a claimant is able to do despite his physical and mental limitations, and The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 416.945(a).

determined that Plaintiff's left overhead reaching should be limited to occasional, based on pain and reduced range of motion. Doc. 8-8 at 64. Finally, Dr. Hewitt noted that Dr. Cheatum's exam findings vary from visit to visit, but generally appear mild to moderate in nature, and that many more clinical findings are indicated on Dr. Cheatum's questionnaire than in regular office visit notes, calling the former "much more detailed and restrictive." Doc. 8-8 at 67–68.

### C. Administrative Hearing

At her administrative hearing, Plaintiff testified that her arthritis leaves her unable to work. Doc. 8-3 at 41. She described arthritis as her primary disabling condition, explaining: "The bones are coming out. All [sic] the wrists hurt a lot. The fingers are beginning to twist. And also the shoulders. They hurt a lot." Doc. 8-3 at 41. She testified further that although she takes her medication as directed, they only help a little with her pain and swelling and "the pain is always there." Doc. 8-3 at 41. She testified that her pain was worse during activities such as sweeping and mopping, which she seldom attempted, and that cold, wet weather aggravated her condition. Doc. 8-3 at 43. She also noted that the swelling in her hands was visible at the hearing. Doc. 8-3 at 44. Plaintiff also complained of being unable to turn on a faucet or grab a pan, and, due to a limited ability to lift her arms, problems with personal grooming. Plaintiff stated that she previously had physical therapy, but it did not help much. Doc. 8-3 at 46.

### D. The ALJ's Findings

In February 2013, the ALJ issued a decision unfavorable to Plaintiff. Doc. 8-3 at 20. At step one, she found that Plaintiff had not engaged in substantial gainful activity since June 1, 2009. Doc. 8-3 at 25. At step two, the ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis, mild SLE overlap, Sjögren's syndrome, and hyperparathyroidism. Doc. 8-3 at 25. At step three, the ALJ found that Plaintiff did not have an

impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1. Doc. 8-3 at 26. The ALJ further found that Plaintiff had the RFC to lift and carry ten pounds occasionally and frequently, stand or walk for four hours of an eight-hour workday, and sit for six hours of an eight-hour workday with the option to stand or stretch for a few minutes at half hour intervals, and the following additional limitations: Plaintiff must avoid climbing, crouching, or crawling; Plaintiff can balance, stoop, kneel, and reach overhead occasionally; Plaintiff can reach, handle, and finger frequently; Plaintiff must avoid exposure to extreme cold, dampness, or humidity; and Plaintiff must avoid concentrated exposure to hazardous moving machinery and unprotected heights. Doc. 8-3 at 26. At step four, the ALJ found that Plaintiff could perform her past relevant work as an accountant clerk and payroll clerk because neither requires the performance of activities precluded by Plaintiff's RFC. Doc. 8-3 at 29.

In determining Plaintiff's RFC, the ALJ considered Dr. Hewitt's RFC assessment, the medical evidence, and Plaintiff's testimony about her pain. Doc. 8-3 at 27–28. The ALJ gave Dr. Cheatum's opinion little weight because it was "not consistent with the medical evidence of record, or his treatment notes." Doc. 8-3 at 29. The ALJ likewise gave Dr. Zevallos' opinion little weight because it was also inconsistent with the medical evidence. Doc. 8-3 at 29. In evaluating Plaintiff's pain, the ALJ found Plaintiff's statements concerning the "intensity, persistence, and limiting effects of [her] symptoms" not entirely credible. Doc. 8-3 at 27. In doing so, the ALJ noted that Plaintiff's pain improved with treatment on multiple occasions and that Plaintiff is able to engage in some activities of daily living. Doc. 8-3 at 27–28.

## II.  LEGAL STANDARD

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920(b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point

during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  DISCUSSION

Plaintiff argues that the ALJ gave little weight to her two treating physicians, Dr. Cheatum, a rheumatologist, and Dr. Zevallos, without identifying any specific evidence contradicting their opinions. Doc. 11 at 13–14. Specifically, Plaintiff calls the ALJ's findings vague and maintains that merely stating that the treating physicians' opinions were "not consistent with the medical evidence" is insufficient to permit meaningful review by this Court. Doc. 11 at 14. Plaintiff points to SSR 96-2p, which requires the ALJ to be sufficiently specific to make clear to subsequent reviewers the weight given to the treating source's medical opinion and reasons for that weight. Doc. 11 at 14. Plaintiff contends that while the ALJ concluded that the opinions conflicted with findings in the medical record, the treatment notes support the opinions of the treating doctors. Doc. 11 at 14. Plaintiff posits that Dr. Cheatum's opinion should have been given controlling or at least great weight under 20 C.F.R. § 416.1527 and the ALJ could not disregard these factors for the opinion of a non-treating, non-examining medical consultant offering opinions outside of her area of specialty (otolaryngology). Doc. 11 at 15–16.

Defendant responds that the treating physician rule was limited by the Fifth Circuit to circumstances where the ALJ summarily rejects the opinion of a claimant's treating physician based only on the testimony of a non-specialty medical expert and where the record does not

contain competing first-hand medical evidence that supports the decision. Doc. 13 at 8. Defendant argues that this case is distinguishable because the ALJ found the treating physician opinions to be inconsistent with the record evidence. Doc. 13 at 8. Specifically, Defendant maintains that Dr. Cheatum's check mark notations on the Rheumatoid Arthritis Impairment Questionnaire are insufficiently detailed and inconsistent with his own examinations and blood tests. Doc. 13 at 10–11. Defendant notes that Dr. Cheatum's treatment notes consistently show good range of motion and responsiveness to ongoing treatment. Doc. 13 at 10–11. Defendant insists that Dr. Hewitt's RFC assessment is better supported than Plaintiff's treating physician opinions due to the foregoing inconsistency with treatment notes and, thus, good cause exists to give those opinions little weight. Doc. 13 at 12–13.

Plaintiff replies that a treating physician's own treatment notes do not constitute "competing first-hand medical evidence" that can be used to determine the weight to be given to a treating physician's opinion. Doc. 14 at 2. Rather, "competing first-hand medical evidence" is evidence from another treating or examining physician. Doc. 14 at 2. Thus, Plaintiff concludes, the ALJ was required to consider the relevant treating physician factors. Doc. 14 at 2. The Court finds Plaintiff's arguments persuasive, and, finding no competing evidence in the record upon which the ALJ discounted the opinions of Plaintiff's two treating physicians, remands this case for further proceedings.

*Applicable Law*

When a treating physician's opinion[4] about the nature and severity of a claimant's

---

[4] A treating physician is defined as someone who provides or has provided medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.902. Generally, the Commissioner considers that a claimant has an ongoing treatment relationship with a physician when the medical evidence establishes that she sees, or has seen, the source with a frequency consistent with accepted medical practice for the type of

impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence, the Commissioner must give that opinion controlling weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The opinion of a specialist generally is accorded greater weight than that of a nonspecialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

A treating physician's opinion may be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory [or] is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques." *Newton*, 209 F.3d at 455–56. Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)]." *Id.* at 453 (emphasis in original). Under Section 404.1527(c), before the Commissioner may reject a treating doctor's opinion, he must consider the following six factors: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support for the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.* at 455–56. It is well settled that even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. *Paul*, 29 F.3d at 211.

*Application to the Facts*

At the outset, the Court notes that given its plain meaning, the phrase "competing

---

treatment and/or evaluation required for her medical condition. *Id.*

evidence," that is, evidence that competes with other evidence, is necessarily different than conflicting evidence from the same source.  Moreover, *Newton* remains this Circuit's precedent, and in it, the Court of Appeals suggests that competing first-hand medical evidence is where "one doctor's opinion is more well-founded than another." 209 F.3d at 458.  In the case *sub judice*, the ALJ's finding that the treatment notes of Drs. Cheatum and Zevallos conflict with their opinions hinges almost entirely on the ALJ's interpretation of the medical record and not on any competing medical evidence, as that term is defined by *Newton*.  Thus, the ALJ was required to conduct the six-factor analysis under § 404.1527(c), and she failed to do so.

   That notwithstanding, remand is not required upon a mere technical violation when no prejudice results.  *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988)) ("procedural perfection in administrative proceedings is not required" where "the substantial rights of a party have not been affected." (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).  That is, the Court will not remand unless the procedural "improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris*, 864 F.2d at 335.

   Here, the evidence supporting the ALJ's rejection of the treating physicians' opinions is not readily ascertained from a review of the record.  By way of example, the ALJ notes that on July 31, 2009, Dr. Cheatham indicated Plaintiff's "arthritis was stable over all." Doc. 8-3 at 27.  However, in that same report, Dr. Cheatum indicated that Plaintiff was experiencing increased pain recently in the left should, and administered an injection for the pain at her request. Doc. 8-8 at 107.  While the ALJ <u>interprets</u> Dr. Cheatum's progress notes to indicate that Plaintiff "continued to show improvement in her symptoms," Doc. 8-3 at 27, the Court's review of the same records reveals that Dr. Cheatum's noted at every visit that Plaintiff nevertheless experienced some pain. *See, e.g.*, Doc. 8-8 at 86 (August 5, 2011, "flare up of pain … especially

11

in the right knee and lower back"); Doc. 8-8 at 88 (May 19, 2011, stiffness and tenderness in her right knee, left shoulder and arm); Doc. 8-8 at 90 (March 10, 2011, tenderness in neck and right upper back and swelling with tenderness in knees); Doc. 8-8 at 92 (December 13, 2010, tenderness is right hand and wrist and knees, with pain in lower back); Doc. 8-8 at 94 (October 25, 2010, pain in left shoulder, lower back and left knee). That Plaintiff's pain was improved at some visits while worse at others, and moved from one location to another, appears consistent with rheumatoid arthritis symptoms.[5] Moreover, while Dr. Hewitt noted that Dr. Cheatum's treatment notes were "somewhat inconsistent" with his questionnaire, as mentioned previously, she noted in the same paragraph that the "RA questionnaire [is] much more detailed and restrictive than ongoing clinic notes." Doc. 8-8 at 67.

      To be clear, the Court does not determine that the ALJ's findings are <u>not supported</u> by substantial evidence. The Court finds only that <u>it cannot make that determination</u> on the record before it. Specifically, the Court cannot find that the ALJ's failure to specifically apply the statutory factors upon its rejection of the treating physicians' opinions, as required by *Newton*, was harmless; to-wit: that the ALJ's conclusion that Drs. Cheatum and Zevallos opinions conflict with their treatment notes is nonetheless supported by the substantial evidence. Accordingly, Plaintiff is entitled to summary judgment on this issue. Because remand is warranted on this ground, the remaining issues are not reached. *See* 20 C.F.R. § 416.1483 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

---

[5] The National Institute of Health notes on its website that rheumatoid arthritis "often occurs in more than one joint and can affect any joint in the body," and that some "people have times when the symptoms get worse (flares), and times when they get better (remissions)." *What is Rheumatoid Arthritis?*, NAT'L INST. OF HEALTH, http://www.niams.nih.gov/Health_Info/Rheumatic_Disease/rheumatoid_arthritis_ff.asp (last visited Dec. 23, 2014).

## IV. CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 10, should be **GRANTED**, *Defendant's Motion for Summary Judgment*, Doc. 12, should be **DENIED**, and the Commissioner's decision should be **REVERSED AND REMANDED**.

**SO RECOMMENDED** on December 23, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE